1
 2024 CO 68 In Re Mercy Housing Management Group Inc., Plaintiff v. Naomi Bermudez. Defendant No. 24SA163
Supreme Court of Colorado, En Banc
October 21, 2024
 
          
 Original Proceeding Pursuant to C.A.R. 21 County Court, City
 and County of Denver, Case No. 24C58400 Honorable Isaam
 Shamsid-Deen, Judge
 
 
          
 Attorneys for Plaintiff: Tschetter Sulzer, P.C. Christopher
 R. Cunningham Denver, Colorado
 
 
          
 Attorneys for Defendant: CED LAW Spencer Bailey Denver,
 Colorado
 
 
          
 Attorneys for Respondent Denver County Court: Paige Arrants,
 Assistant City Attorney Nathan Cash, Assistant City Attorney
 Denver, Colorado
 
 2
 
          
 Attorneys for Amici Curiae Colorado Poverty Law Project and
 Colorado Legal Services: Jordan Cotleur Carol Kennedy Denver,
 Colorado
 
 
           Jose
 L. Vasquez Denver, Colorado
 
 
          
 JUSTICE SAMOUR delivered the Opinion of the Court, in which
 CHIEF JUSTICE MARQUEZ, JUSTICE GABRIEL, and JUSTICE HART
 joined. JUSTICE HOOD, joined by JUSTICE BERKENKOTTER,
 dissented. JUSTICE BOATRIGHT did not participate.
 
 
          
 ORDER MADE ABSOLUTE
 
 3
 
           SAMOUR
 JUSTICE
 
 
          ¶1
 The tradition of trial by jury in possessory actions is of
 revered vintage. One of its earliest forms, known as
 "the assize of novel disseisin," can be traced back
 to the twelfth century. Pernell v. Southall Realty,
 416 U.S. 363, 371 (1974). The assize of novel disseisin
 allowed those dispossessed of their tenement to speedily seek
 recovery of their property. Id. Once a dispossessed
 plaintiff lodged a complaint, "a writ would issue
 bidding the sheriff to summon 12 good and lawful men of the
 neighborhood to 'recognize' before the King's
 justices whether the defendant had unjustly disseised the
 plaintiff of his tenement." Id. at 371-72.
 Still, despite the necessity to assemble a jury, the action
 was intended to be "a summary procedure designed to mete
 out prompt justice in possessory disputes." Id.
 at 372.
 
 
          ¶2
 Some eight centuries later, in 1974, with an eye toward this
 history, the Supreme Court declared that the role of juries
 persisted in a statutory possessory action. Id. at
 371-76. Furthermore, the Court issued a forceful defense of
 the importance of juries in landlord-tenant disputes.
 Eschewing concerns that a jury-trial right was at odds with
 the intended summary proceeding, the Court recognized that
 "[s]ome delay, of course, is inherent in any fair-minded
 system of justice." Id. at 385. Paramount for
 the Court was the "fair opportunity" for both
 parties in a landlord-tenant dispute "to present their
 cases" in order to ensure "that justice be done
 before a man is evicted from his home." Id.
 
 4
 
          ¶3
 Fast-forward fifty years. Before us is Naomi Bermudez, who,
 in danger of eviction from her home, asks to be heard by a
 jury regarding factual disputes on her alleged violations of
 her lease agreement with her landlord, Mercy Housing
 Management Group Inc. ("Mercy Housing"). Mercy
 Housing, however, argues that a jury trial has no place in
 this forcible-entry-and-detainer ("FED") action
 seeking possession of the property Bermudez leases. In so
 doing, it relies on section 13-40-115, C.R.S. (2024),
 "Judgment-writ of restitution-cure period," which
 is part of the FED statutory framework.[1] The question for
 us is whether Bermudez is entitled to a jury trial on the
 factual disputes underlying this FED-possession action.
 
 
          ¶4
 In Colorado, there is no constitutional right to a trial by
 jury in civil cases. Husar v. Larimer Cnty. Ct., 629
 P.2d 1104, 1104 (Colo.App. 1981) (citing Setchell v.
 Dellacroce, 454 P.2d 804, 806 (Colo. 1969)). Instead,
 such a right derives from either statute or court rule.
 Id. (citing Jones v. Est. of Lambourn, 411
 P.2d 11, 15 (Colo. 1966)). In county court cases like this
 one, the governing rules are those within the Colorado Rules
 of Civil Procedure that are applicable to county courts.
 See § 13-40-119, C.R.S. (2024); C.R.C.P. 301.
 And C.R.C.P. 338, "Right to Trial by Jury,"
 
 5
 
 specifically declares that where the legislature has provided
 a statutory right to a jury trial, a jury must decide all
 issues of fact. C.R.C.P. 338(a). That rule is clear as a
 bell: "[I]n actions wherein a trial by jury is
 provided by . . . statute, including actions for the recovery
 of specific real . . . property . . . all issues of fact
 shall be tried by a jury." Id. (emphasis
 added).
 
 
          ¶5
 Mercy Housing nevertheless urges that C.R.C.P. 338(a) does
 not reflect that there is a statutory right to a jury trial
 in FED-possession actions. According to Mercy Housing, FED
 cases are actions for the possession of real
 property, not actions referenced in C.R.C.P. 338(a) for
 the "recovery of specific real . . . property." In
 the alternative, says Mercy Housing, even if C.R.C.P. 338(a)
 applies here, it clashes with, and must give way to, the FED
 statute. That is, even assuming C.R.C.P. 338(a) refers to the
 FED statute, Mercy Housing contends that there is no right to
 a jury trial in this possession case because that statute
 limits the jury-trial right to cases in which the plaintiff
 seeks money damages. What's more, Mercy Housing asserts
 that the summary nature of FED actions for possession,
 coupled with the high volume of such cases, would make jury
 trials impractical, if not altogether impossible.
 
 
          ¶6
 The trial court denied Bermudez's request for a jury
 trial. And its ruling, which it defends before us, aligns
 with the prevailing practice in county courts throughout the
 state. We speak up now to correct that trend.
 
 6
 
          ¶7
 Turning first to the statutory right to a trial by jury in
 actions seeking what C.R.C.P. 338(a) refers to as "the
 recovery of specific real . . . property," the case law
 demonstrates that there is no substantive difference between
 the old common law action of ejectment and the modern
 statutory FED-possession action, and since the former was an
 action "for the recovery of specific real . . .
 property," as that phrase is used in C.R.C.P. 338(a), so
 is the latter. Thus, contrary to the assertions by Mercy
 Housing and the county court, the rule encompasses
 FED-possession actions, and the statutory right to a jury
 trial applies as much in a modern FED-possession action as it
 did in an old ejectment action.
 
 
          ¶8
 The case law also undercuts the county court's contention
 that FED-possession actions are actions in equity that must
 thus be tried to a court instead of a jury. Precedent from
 our court and the Supreme Court makes clear that
 FED-possession actions are legal in nature and that factual
 disputes in such actions may be tried to a jury.
 
 
          ¶9
 Importantly, guided by the case law, we discern that the FED
 statute itself confers the right to a jury trial regarding
 factual disputes in FED-possession cases. Hence, instead of
 clashing with C.R.C.P. 338(a), the FED statute works hand in
 hand with it. To borrow from Forrest Gump, the statute and
 the rule go together like peas and carrots.
 
 7
 
          ¶10
 While we fully acknowledge concerns that a jury-trial right
 might overwhelm our county courts, we ultimately conclude
 that the limited nature of this right will not prove
 unworkable. Regardless, our job is to interpret and apply the
 law handed down by the legislature, and we may not act by
 judicial fiat when the practical consequences may be deemed
 undesirable by some.
 
 
          ¶11
 Accordingly, we hold that there is a right to a jury trial on
 any factual disputes in FED-possession actions. Because the
 dispute here involves factual issues related to possession,
 we make absolute the order to show cause and remand with
 instructions for the county court to schedule a jury trial on
 those limited issues.
 
 
          I.
 Facts and Procedural History
 
 
          ¶12
 Bermudez is a tenant in Clare Gardens, a federally subsidized
 low-income housing complex managed by Mercy Housing. In
 December 2022, Bermudez and Mercy Housing executed a
 residential lease agreement ("Lease"). The initial
 term of the Lease was scheduled to end on November 30, 2023.
 In March 2023, however, Mercy Housing sought to terminate the
 Lease early, claiming that Bermudez had repeatedly violated
 it.
 
 
          ¶13
 In its Notice to Quit, Mercy Housing specifically alleged
 that: (1) an unauthorized guest had resided with Bermudez at
 Clare Gardens for longer than a ninety-day period; (2)
 Bermudez's unauthorized guest had violated the
 
 8
 
 prohibition against maintaining or repairing vehicles on the
 property; and (3) the unauthorized guest had verbally
 threatened and harassed another resident on the property.
 Bermudez did not vacate her unit.
 
 
          ¶14
 Mercy Housing subsequently filed this FED-possession action.
 In its complaint, it clarified that this was "a
 possession only matter" and that it was "not
 requesting money damages." It further stated that
 Bermudez had "refused to . . . vacate the premises"
 and continued "to wrongfully hold possession."
 Bermudez timely filed an answer in which she denied each of
 the allegations in the Notice to Quit and demanded a jury
 trial. She separately filed, again timely, a Notice of Jury
 Demand "on all issues so triable, including . . . on the
 issue of possession and all issues of fact." Bermudez
 simultaneously paid the requisite jury fee.
 
 
          ¶15
 The county court set the matter for a bench trial and stated
 that it would hear arguments on Bermudez's jury demand on
 the day of trial. When Bermudez requested an earlier ruling
 on her jury demand, the court immediately issued an order
 denying the jury demand. It concluded that "[i]n
 Colorado, there is no constitutional right to a jury trial in
 civil matters."
 
 
          ¶16
 Bermudez then brought this C.A.R. 21 petition. For the
 reasons set forth below, we exercise our original
 jurisdiction.
 
 9
 
          II.
 Original Jurisdiction
 
 
          ¶17
 C.A.R. 21 vests our court with sole discretion to exercise
 our original jurisdiction. See C.A.R. 21(a)(1).
 Mindful that a proceeding under C.A.R. 21 is extraordinary in
 nature and limited in both purpose and availability, we have
 confined exercise of our original jurisdiction to specific
 circumstances. People v. Cortes-Gonzalez, 2022 CO
 14, ¶ 21, 506 P.3d 835, 842. In the past, we've
 exercised our original jurisdiction when "an appellate
 remedy would be inadequate, a party may suffer irreparable
 harm, or a petition raises an issue of first impression that
 has significant public importance." People v.
 Kembel, 2023 CO 5, ¶ 18, 524 P.3d 18, 23.
 
 
          ¶18
 Bermudez raises four contentions to support her invocation of
 our original jurisdiction. We discuss each in turn.
 
 
          ¶19
 First, Bermudez contends, and we concur, that this is an
 issue of significant public importance because numerous
 county courts across the state are denying requests for jury
 trials in FED-possession cases, a practice that will continue
 unless our court intervenes. See People v. Sherwood,
 2021 CO 61, ¶ 17, 489 P.3d 1233, 1238 (granting a C.A.R.
 21 petition in a different context because "we
 confront[ed] a question of statewide importance that [was]
 likely to recur"); Kembel, ¶ 20, 524 P.3d
 at 23 (finding C.A.R. 21 relief appropriate when
 "waiting to address the issue on direct appeal would
 mean that [the trial] court, and likely others, would
 continue
 
 10
 
 to [rule erroneously]"); Magill v. Ford Motor
 Co., 2016 CO 57, ¶ 9, 379 P.3d 1033, 1036 (electing
 to hear a case under C.A.R. 21 because "[t]his issue not
 only concern[ed] the rights of the parties . . . but also
 affect[ed] the rights of future litigants").
 
 
          ¶20
 Second, Bermudez maintains she has no adequate remedy.
 She's right. As Bermudez notes, if she has to wait to
 raise this issue on appeal in the event she loses at trial,
 she will likely suffer irreparable harm.
 
 
          ¶21
 In appealing to the district court, Bermudez would be
 required to post a bond to stay the eviction. §
 13-6-311(1)(b), C.R.S. (2024); C.R.C.P. 411(a). Bermudez,
 however, is a low-income tenant in a federally subsidized
 housing project, and she informs us that she's unlikely
 to be able to afford a bond to stay the eviction.
 Consequently, she could be evicted while awaiting the outcome
 of any appeal. Even if Bermudez were able to obtain a nominal
 appeal bond and prevail in her appeal, the record of her
 eviction could still be held against her in the future by
 tenant-screening companies.[2] This court has recognized that an
 
 11
 
 appeal is an inadequate remedy if an eviction will move
 forward and dispossess a tenant of her home, mar her rental
 history, and potentially lead to termination of her
 subsidized housing voucher. Arvada Vill. Gardens LP v.
 Garate, 2023 CO 24, ¶ 7, 529 P.3d 105, 107.
 
 
          ¶22
 Third, Bermudez correctly points out that we have found on
 several occasions that violation of the right to a jury trial
 may warrant C.A.R. 21 review. See Murray v. Dist.
 Ct., 539 P.2d 1254, 1254 (Colo. 1975); Halliburton
 v. Cnty. Ct., 672 P.2d 1006, 1009 (Colo. 1983);
 McConnell v. Dist. Ct., 680 P.2d 528, 531 (Colo.
 1984). As we see it, the denial of Bermudez's jury-trial
 request deserves our interlocutory attention.
 
 
          ¶23
 And finally, Bermudez argues that this issue is otherwise
 likely to evade appeal as few tenants have the resources or
 incentive to appeal a county court's denial of their
 jury-trial demand. See In re Marriage of Wollert,
 2020 CO 47, ¶ 19, 464 P.3d 703, 709 (exercising original
 jurisdiction because the issues were "likely to evade
 our review"). Once again, we agree.
 
 
          ¶24
 Accordingly, the exercise of our original jurisdiction in
 this matter is appropriate. We thus proceed to the question
 of whether the county court erred when it denied Bermudez a
 jury trial on factual disputes relevant to the issue of
 
 12
 
 possession in this FED action. As usual, though, before
 turning to our analysis, we set forth the standard that
 illuminates our review.
 
 
          III.
 Standard of Review
 
 
          ¶25
 Whether there exists a jury-trial right on factual disputes
 relevant to the issue of possession in FED cases hinges
 largely on the FED statute and C.R.C.P. 338(a), which we
 interpret de novo. Arvada Vill. Gardens, ¶ 9,
 529 P.3d at 107 (stating that issues of statutory
 interpretation are reviewed de novo); Garcia v. Schneider
 Energy Servs., Inc., 2012 CO 62, ¶ 7, 287 P.3d 112,
 114 ("We review de novo the trial court's
 interpretation of a rule of civil procedure."). And to
 the extent that our analysis is rooted in the case law, it
 entails a question of law, which we likewise review de novo.
 Cortes-Gonzalez, ¶ 24, 506 P.3d at 842.
 
 
          IV.
 Analysis
 
 
          ¶26
 In Colorado, the right to a trial by jury in civil cases is
 rooted in either statute or rule, not the constitution.
 Husar, 629 P.2d at 1104. C.R.C.P. 338(a) states that
 "all issues of fact shall be tried by a jury" in
 "actions" in which a statute provides "a trial
 by jury . . ., including actions for the recovery of specific
 real . . . property, with or without damages." C.R.C.P.
 338(a).
 
 
          ¶27
 Bermudez argues that, under the case law, there is no
 meaningful difference between the old common law action of
 ejectment and the modern statutory FED-possession action, and
 since the former was subject to the statutory jury-trial
 
 13
 
 right referenced in C.R.C.P. 338(a), the latter is, too.
 According to Bermudez, then, the case law enshrines her right
 to a jury trial on issues of fact in this FED action for
 possession, which is legal, not equitable, in nature. See
 Baumgartner v. Schey, 353 P.2d 375, 378-81 (Colo. 1960);
 Davis v. Holbrook, 55 P. 730, 730-31 (Colo. 1898);
 RTV, L.L.C. v. Grandote Int'l Ltd. Liab. Co.,
 937 P.2d 768, 770 (Colo.App. 1996); Husar, 629 P.2d
 at 1105. As for the FED statute, Bermudez urges that it is
 consistent with the right to a jury trial referenced in
 C.R.C.P. 338(a). And, says Bermudez, the policy reasons
 advanced by Mercy Housing and the county court do not compel
 a different ruling.
 
 
          ¶28
 We agree with Bermudez. In fact, her rationale supplies the
 blueprint for our four-floor analytical architecture.
 
 
          ¶29
 First, focusing on the statutory right to a trial by jury in
 actions seeking "the recovery of specific real . . .
 property," as referenced in C.R.C.P. 338(a), the case
 law reveals an unbroken thread between the old common law
 action of ejectment and the modern statutory FED-possession
 action. And since the former was an action "for the
 recovery of specific real . . . property," the latter is
 as well. Thus, contrary to the assertions by Mercy Housing
 and the county court, we perceive no meaningful difference
 between "the recovery of specific real . . .
 property," as that phrase is used in C.R.C.P. 338(a),
 and the issue of possession in statutory FED
 actions. Accordingly, we conclude that the rule encompasses
 FED-possession
 
 14
 
 actions and that the statutory right to a jury trial applies
 in FED-possession actions as much as it did in old ejectment
 actions.
 
 
          ¶30
 The case law also undercuts the county court's contention
 that FED-possession actions are actions in equity that must
 thus be tried to a court instead of a jury. Precedent from
 our court and the Supreme Court makes clear that
 FED-possession actions are actions at law.
 
 
          ¶31
 Second, we turn to the FED statute itself. Steered by the
 case law, we discern that this statute confers the right to a
 jury trial regarding factual disputes in FED-possession
 cases. Therefore, in our view, the FED statute and C.R.C.P.
 338(a) are congruous.
 
 
          ¶32
 Third, we explain why policy arguments relating to the volume
 of jury trials that may ensue in the wake of today's
 ruling do not deter us from our course. Although the concerns
 are understandable, we are unpersuaded that today's
 decision will cause the sky to fall. And, in any case, such
 concerns do not give us license to contravene the FED
 statute.
 
 
          ¶33
 Fourth, we apply these principles to the facts in the instant
 matter. We ultimately conclude that Bermudez is entitled to a
 jury trial on the factual issues she raises.
 
 15
 
          A.
 C.R.C.P. 338(a) References a Statutory Right to a Jury Trial
 on Factual Issues in FED Actions for Possession, and the Case
 Law Is Consistent with the Rule
 
 
          ¶34
 C.R.C.P. 338(a) clearly identifies an action for the recovery
 of real property as one in which the right to a trial by jury
 is provided by statute:
 
 
 Upon the filing of a demand and the simultaneous payment of
 the requisite jury fee by any party in actions wherein a
 trial by jury is provided . . . by statute, including
 actions for the recovery of specific real . . .
 property, with or without damages, . . .
 all issues of fact shall be tried by a jury.
 
 
 (Emphases added.) Thus, so long as landlords or tenants
 timely demand a jury trial and pay the requisite jury fee in
 an action for the recovery of real property, they are
 entitled to a jury trial on all issues of fact, regardless of
 whether the plaintiff seeks money damages.
 
 
          ¶35
 But Mercy Housing tries to distance itself from the rule by
 nudging us to hold that FED actions for possession
 differ from actions referenced in C.R.C.P. 338(a) "for
 the recovery of specific real . . . property."
 (Emphasis added.) And so, the argument goes, the rule is
 inapplicable in this FED-possession action. Mercy Housing
 further contends that the cases on which Bermudez relies are
 fatally flawed because they improperly equate the old common
 law action of ejectment to the modern statutory
 FED-possession action. In Mercy Housing's view, the FED
 statute abrogated the common law and, therefore, ejectment
 principles are inapposite in FED-possession cases.
 
 16
 
          ¶36
 For its part, the county court agrees with Mercy Housing that
 the common law action of ejectment is not coextensive with
 the modern statutory FED-possession action. Beyond that,
 though, it points out that the case law provides for jury
 trials in proceedings that are legal, not equitable, in
 nature. And, maintaining that FED-possession actions seek
 only equitable relief, the county court asks us to hold that
 they are properly tried to the court, not a jury. The county
 court also homes in on C.R.C.P. 338(a)'s use of the word
 "specific" (as in "the recovery of specific
 real . . . property") as a basis to distinguish
 FED-possession actions.
 
 
          ¶37
 We are unmoved by any of these contentions. In the final
 analysis, adherence to jurisprudence from our court and the
 Supreme Court, not deviation from it, wins the day. Indeed,
 the common law in this area is an edifice built on rock, not
 sand; it has endured through the decades and stands
 foursquare in Bermudez's corner.
 
 
          ¶38
 At base, the dispute before us is governed by the notion that
 the right to a jury trial under the Colorado Rules of Civil
 Procedure exists for proceedings that are legal, not
 equitable, in nature. See Mason v. Farm Credit of S.
 Colo., ACA, 2018 CO 46, ¶ 10, 419 P.3d 975, 979.
 But controlling precedent-both from our court and the Supreme
 Court-bespeaks a stalwart cord between modern FED actions for
 the possession of real property and their ancient
 predecessor, ejectment
 
 17
 
 proceedings for the recovery of specific real property,
 which, since time immemorial, have been considered
 fundamentally legal in nature. This case law is both on point
 and dispositive. Therefore, today, we reaffirm those
 time-honored principles and clarify that FED-possession
 actions are actions at law for the recovery of
 specific real property and that the factual disputes in such
 actions may be tried to a jury.
 
 
          ¶39
 Our decision in Baumgartner is our jumping-off
 point. There, the owner of certain real property sought a
 declaratory judgment, claiming that lessees of the property
 were in possession without a lease agreement. 353 P.2d at
 375. One of the putative lessees filed an answer denying the
 landowner's allegations; he asserted that he did, in
 fact, have a lease for the year in question and raised other
 factual disputes. Id. at 375-76.
 
 
          ¶40
 In deciding whether the putative lessee was entitled to a
 jury trial, we first looked to the remedy being sought in the
 landowner's action: "In essence[,] the [landowner]
 claims to be entitled to possession of the land involved on
 the assertion that there is no . . . lease for the year [in
 question] . . . and seeks immediate possession thereof."
 Id. at 378. Although the landowner ostensibly sought
 a declaratory judgment, we determined that the action was
 "clearly one in the nature of ejectment."
 Id. at 379.
 
 18
 
          ¶41
 Our focus on the requested remedy dovetailed nicely with our
 regard for the historical nature of the right sought to be
 enforced. We declared that the "modern form of the
 common law action of ejectment is forcible entry and detainer
 as provided in [the FED statutory framework]."
 Id. "The modern statutory action of
 forcible-entry-and-detainer," we continued, "is
 essentially the same as the old ejectment action."
 Id.
 
 
          ¶42
 Significantly, we observed that "the nature of the
 action as one in ejectment ha[d] not been changed by statutes
 abolishing fictions or regulating procedure."
 Id. (quoting 18 Am. Jur. Ejectment §
 5, at 11 (1938)). So, notwithstanding the new statutes, we
 discerned that the common law still elucidated the principles
 governing FED-possession actions. On this point, we
 unequivocally concluded that "ejectment is, primarily, a
 legal action." Id. (quoting French v.
 Golston, 100 P.2d 581, 584 (Colo. 1940)). Thus, we
 resolved the issue in the following terms:
 
 
 It is, therefore, clear that if [the landowner's] action
 had not been brought under the Declaratory Judgments Act
 prior to the end of the lease period it would have been
 an action in ejectment or forcible entry and detainer and
 in either case would have been an action at law.
 Thus, the character of the action, the entire
 controversy, is one at law, and one entitling [the putative
 lessee] to a trial by jury of issues of fact.
 
 
 Id. at 380 (emphasis added). We couldn't have
 been clearer.
 
 
          ¶43
 Digging even deeper into the archives, we find
 Davis, a case dating back to the nineteenth century,
 which proves the pedigree of Baumgartner. The
 FED-possession proceeding there was initially "tried
 before the court and a jury."
 
 19
 
 Davis, 55 P. at 730. Ultimately, though, "the
 court, of its own motion, took the case from the jury and
 directed a verdict for the plaintiffs." Id. The
 case then made its way to our court. Our opinion in Davis is
 instructive here in two ways.
 
 
          ¶44
 First, we noted that the "object of th[e] action was the
 recovery of the possession of real property."
 Id. Along the same lines, we observed that
 "before the reformed procedure"-i.e., the enactment
 of the FED statutory framework-"the action would have
 been denominated 'ejectment.'" Id. As
 such, we characterized the "cause of action set forth in
 the complaint" as "strictly legal."
 Id. Thus, even our nascent case law plainly teaches
 that, in FED-possession actions, both the nature of the
 remedy sought and the historical nature of the right to be
 enforced are legal, not equitable.
 
 
          ¶45
 Second, we said in Davis that "the issue upon
 the legal cause of action alleged in the complaint
 should have been submitted to the jury, if there was any
 dispute concerning it." Id. at 731
 (emphases added). True, this axiom didn't affect the
 outcome in that case. But that's because the defendants
 had raised only an "equitable defense in the[ir]
 answer"-they hadn't raised any questions of fact
 related to the ejectment action itself. Id. at 730.
 Indeed, at trial, the defendants had "conceded that the
 legal title was in plaintiffs, and there was no evidence at
 all contradicting it; . . . the only evidence was that
 pertaining to the equitable defense." Id. at
 731. The salient upshot of Davis is this: Since
 FED-possession
 
 20
 
 actions are "strictly legal" in nature, whenever
 defendants in such proceedings raise factual disputes in
 their answer to the plaintiff's complaint, they are
 entitled to a jury trial on those factual disputes.
 Id. at 730-31.
 
 
          ¶46
 The county court here, however, points to Dohner v. Union
 Central Life Insurance Co., 121 P.2d 661 (Colo. 1942),
 for the proposition that FED-possession actions are equitable
 in nature. Dohner, though, simply reiterates the
 second point we extract from Davis. In
 Dohner, we reviewed a "statutory unlawful
 detainer action" and considered whether "the trial
 court erred in denying [the defendant's] request for a
 jury trial." 121 P.2d at 661-62. The defendant there
 relied on language in the relevant provision of the former
 Code of Civil Procedure, which was nearly identical to that
 currently found in C.R.C.P. 338(a). Dohner, 121 P.2d
 at 662. Specifically, the former Code stated that, "[i]n
 actions for the recovery of specific, real . . . property, .
 . . an issue of fact must be tried by a jury, unless a jury
 trial is waived ...." Id. (quoting Colorado
 Code of Civil Procedure § 191 (1935)). As in
 Davis, the only reason we concluded that the
 defendant wasn't entitled to a jury trial was because the
 defendant had "interposed" a purely "equitable
 defense." Id. And so, again, although the
 nature of the unlawful detainer action itself was legal,
 there were no factual disputes to resolve. In that
 circumstance, we said, the pertinent provision of the code
 "was without application, and . . . the determination of
 the equitable issue was for the court and not a jury."
 Id.
 
 21
 
 (first citing Weir v. Welch, 203 P. 1100, 1101
 (Colo. 1922); and then citing Davis, 55 P. at 731).
 
 
          ¶47
 Colorado precedent from a more recent epoch, too, reinforces
 what we taught all those years ago in Davis and
 Dohner. See RTV, 937 P.2d at 770;
 Husar, 629 P.2d at 1104-05. Like its ancestors,
 Husar drives a stake into the heart of Mercy
 Housing's asserted distinction between statutory
 FED-possession actions, on the one hand, and actions
 referenced in C.R.C.P. 338(a) for the recovery of specific
 real property, on the other. 629 P.2d at 1104-05.
 Husar reaffirms that this semantic challenge has no
 place to lay its head.
 
 
          ¶48
 In Husar, a landlord filed a statutory FED action,
 seeking, among other things, "possession of the
 property." Id. at 1104. The tenant "filed
 an answer denying the allegations in the complaint" and
 demanding a jury trial. Id. The county court
 rejected the demand, finding that there was "no right to
 a jury trial in a forcible entry and detainer action."
 Id. A division of our court of appeals rightly
 disagreed.
 
 
          ¶49
 The division uttered a now-familiar refrain: "[T]he
 forcible entry and detainer statutes are the modern
 descendants of the common law action of ejectment."
 Id. at 1105 (first citing Pernell, 416 U.S.
 at 375; then citing Baumgartner, 353 P.2d at 379;
 and then citing Davis, 55 P. at 730). Talk about
 hitting the nail on the head: In the same way that
 "[e]jectment actions were actions at law and thus
 
 22
 
 triable to a jury," so too are statutory FED-possession
 actions. Id. And Husar distinguished
 Dohner on the same ground we do-in FED-possession
 actions, "there is no right to a jury trial where the
 only issues to be tried are equitable." Id.
 
 
          ¶50
 Of particular interest here is the Husar
 division's reliance on Pernell, where the
 Supreme Court recognized that an action seeking simply
 "the recovery and possession of
 specific, real, or personal
 property . . . is one at law."[3] Pernell,
 416 U.S. at 370 (emphases added) (quoting Whitehead v.
 Shattuck, 138 U.S. 146, 151 (1891)). And
 Whitehead, the case on which Pernell
 leaned, went on to say that "[a]n action at law,
 whether in the ancient form of ejectment or in the form now
 commonly used, will lie only against a party in
 possession." 138 U.S. at 156 (emphases added).
 As with all semantic inquiries, language matters. And the
 language the Supreme Court used in Pernell and
 Whitehead is telling. It effectively blended the
 terms of C.R.C.P. 338(a)-"recovery of specific real . .
 . property"-with possession of real property in
 an eviction proceeding. Indeed, the Pernell Court
 cited C.R.C.P. 38(a)-which contains identical language to,
 and is the district-court analogue of, C.R.C.P. 338(a)-as
 authority placing Colorado among those states that
 "provide for trial
 
 23
 
 by jury in summary eviction proceedings." 416 U.S. at
 384 &n.34. This case law prompts us to reject the
 distinction that Mercy Housing and the county court ask us to
 make between the "recovery of specific real . . .
 property," as referenced in C.R.C.P. 338(a), and the
 possession of real property in a statutory FED action.
 
 
          ¶51
 The case law also tears down one of the supporting beams of
 the county court's position-namely, that C.R.C.P.
 338(a)'s inclusion of the word "specific" (as
 in the "recovery of specific real . . . property")
 somehow differentiates it from the FED statutory framework.
 Based on the Supreme Court's pronouncements, that simply
 isn't so. And, in lockstep with that jurisprudence, our
 common law has plainly held, for well over a century, that
 FED-possession actions are actions to recover specific
 real property. See RTV, 937 P.2d at 770 (noting
 that actions "for the recovery of specific real . . .
 property" is a phrase that "describes the common
 law action of ejectment," and that, because ejectment
 "has been supplanted by the modern action for forcible
 entry and detainer . . . the right to jury trial . . .
 normally exists in such an action" (first omission in
 original)).
 
 
          ¶52
 In short, far from finding shelter in the case law, the
 contentions advanced by Mercy Housing and the county court
 are undermined by it. Today, we place our renewed imprimatur
 on the well-established lessons in the case law. In so doing,
 we perceive no meaningful difference between "the
 recovery of specific real . . . property," as that
 phrase is used in C.R.C.P. 338(a), and the issue of
 
 24
 
 possession in FED actions. Instead, we reaffirm what our
 court of appeals said more than four decades ago when it
 acknowledged a continuous string between the old common law
 action of ejectment and our modern FED statute: "The
 general assembly recognized that there could be jury trials
 in forcible entry and detainer actions by the language used
 in [the FED statute]." Husar, 629 P.2d at 1105.
 That statutory language is where we turn our attention next.
 
 
          B.
 The FED Statute Provides a Right to a Jury Trial on Factual
 Issues in FED Cases for Possession
 
 
          ¶53
 Mercy Housing maintains that, even if C.R.C.P. 338(a)
 encompasses FED-possession actions, it is incompatible with
 the FED statute, and the FED statute deserves preeminence.
 More specifically, according to Mercy Housing, the FED
 statute requires a summary bench process that clashes with
 the right to a jury trial referenced in C.R.C.P. 338(a). Au
 contraire. In our view, the FED statute and C.R.C.P. 338(a)
 are compatible.
 
 
          ¶54
 By Mercy Housing's telling, the FED statute supplants
 C.R.C.P. 338(a) by route of section 13-40-119 and C.R.C.P.
 381. Let's take section 13-40-119, "Rules of
 practice," first. It directs that, "[i]n all
 actions brought under any provision of this article [40] in
 any court, the proceedings shall be governed by the rules of
 practice and the provisions of law concerning civil actions
 in such court ...." Accordingly, both C.R.C.P. 338(a)
 and 381 apply to FED actions filed in county court. And in
 Mercy Housing's view, it is the language of C.R.C.P. 381
 that gives the FED statute
 
 25
 
 the authority to usurp C.R.C.P. 338(a). C.R.C.P. 381 states
 that "[t]hese rules do not govern procedure and practice
 in any special statutory proceeding insofar as they are
 inconsistent or in conflict with the procedure and
 practice provided by the applicable statute."
 (Emphases added.) Mercy Housing perceives a conflict between
 C.R.C.P. 338(a)'s reference to the statutory right to a
 jury trial in actions to recover specific real property and
 the purported designation of decision-making power in the
 court under the FED statute. Believing that these authorities
 are at blows, Mercy Housing contends that C.R.C.P. 381 hands
 the victory to the FED statute.
 
 
          ¶55
 Mercy Housing's interpretation misunderstands the
 relationship of the civil rules to the FED statute. Section
 13-40-119 itself broadly applies the Colorado Rules
 of Civil Procedure (including C.R.C.P. 338(a)) to FED
 actions. The only exception to this broad application of the
 rules is if it is "otherwise provided in this article
 [40]." § 13-40-119. Neither Mercy Housing nor the
 county court points to any provision in article 40 that
 exempts C.R.C.P. 338(a) from applying to FED actions. And we
 have not identified any in the course of our own research.
 Thus, rather than eclipse the Colorado Rules of Civil
 Procedure, the FED statute takes their hand and allows them
 to take the lead in this procedural tango.
 
 
          ¶56
 But doesn't C.R.C.P. 381 alter the analysis? The answer
 is "no." Nowhere does C.R.C.P. 381 provide a method
 through which the procedural hand of
 
 26
 
 C.R.C.P. 338(a) is shaken off and not allowed to guide in
 FED-possession actions. That's because there is no
 conflict between C.R.C.P. 338(a) and the FED statute.
 Actually, the pertinent sections of the FED statute, section
 13-40-115(1)-(2) (referred to individually as
 "subsection (1)" and "subsection (2)" or,
 collectively, as "subsections (1) and (2)"),
 expressly contemplate jury trials for FED actions like this
 one.
 
 
          ¶57
 In coming to the opposite conclusion, Mercy Housing expands
 the scope of subsection (1), which makes no mention of a
 trial by jury, while diminishing the scope of subsection (2),
 which does mention a trial by jury (twice). But we're
 required to construe these two subsections together.
 Appellate courts "must read a statute as a whole, aiming
 to give consistent, harmonious, and sensible effect to all of
 its parts." Castro v. People, 2024 CO 56,
 ¶ 33, 550 P.3d 1124, 1131.
 
 
          ¶58
 When subsections (1) and (2) are read together, it becomes
 clear that they work in tandem. These two subsections present
 a binary choice. Much like a sunrise and a sunset can't
 both be present at the same time, subsections (1) and (2)
 can't both be in play at the same time. Subsection (1)
 applies when the defendant could not be personally
 served pursuant to section 13-40-112(1), C.R.S. (2024),
 and "service was had only by posting in accordance with
 section 13-40-112(2)."[4] § 13-40-115(1). Subsection
 (2),
 
 27
 
 in turn, applies when the defendant was personally
 served pursuant to section 13-40-112(1). §
 13-40-115(2). Hence, when subsection (1) applies, subsection
 (2) doesn't, and when subsection (2) applies, subsection
 (1) doesn't.
 
 
          ¶59
 Mercy Housing champions subsection (1) while ignoring
 subsection (2). But we see it differently. We conclude that
 subsection (2) controls here because Bermudez was
 personally served.
 
 
          ¶60
 Under subsection (1), "[u]pon the trial of any
 action" pursuant to article 40 involving a defendant who
 could not be personally served, "if the
 court finds that the defendant has committed an unlawful
 detainer, the court shall enter judgment for the
 plaintiff to have restitution of the premises and shall issue
 a writ of restitution." § 13-40-115(1) (emphases
 added). By contrast, under subsection (2), "[u]pon a
 trial or further hearing pursuant to this article 40"
 involving a defendant who was personally served,
 "if the court or jury has not already tried the
 issue of unlawful detainer, it may do so." §
 13-40-115(2) (emphasis added). This language contemplates
 that a jury (not just a court) may try "the issue of
 unlawful
 
 28
 
 detainer" when subsection (2) is triggered (i.e., when
 the defendant was personally served). Subsection (2) then
 reads as follows:
 
 
 If the court finds that the defendant has committed an
 unlawful detainer, the court shall enter judgment for
 the plaintiff to have restitution .... In addition to the
 judgment for restitution, the court or jury shall further
 find the amount of rent, if any, due to the plaintiff .
 . . [and] the amount of damages, if any, sustained by the
 plaintiff . . . and damages sustained by the plaintiff . . .
 on account of injuries to the property. The court shall enter
 judgment for such amounts, together with any reasonable
 attorney fees and costs ....
 
 
 Id. (emphases added).[5]
 
 
          ¶61
 With the case law as our beacon, we interpret the phrase,
 "the issue of unlawful detainer" in subsection (2),
 to refer to the factual issue of unlawful detainer
 (i.e., the factual dispute in an unlawful detainer action),
 as to which there is a jury-trial right, and the phrase,
 "whether the defendant has committed unlawful
 detainer" in the same subsection, to refer to the
 ultimate legal question in an unlawful detainer
 action, which a court must resolve. We, of course, are no
 strangers to the well-accepted use of case law as an
 interpretive aid in the construction of statutes. See,
 e.g., § 18-1-104(3), C.R.S. (2024) (recognizing
 this
 
 29
 
 principle in the context of the criminal code). Indeed, when
 our General Assembly legislates in a particular area, we
 presume it was "aware of existing case law
 precedent." Vigil v. Franklin, 103 P.3d 322,
 327 (Colo. 2004). And we must generally construe statutes
 "as consistent with the common law." Larrieu v.
 Best Buy Stores, L.P., 2013 CO 38, ¶ 13, 303 P.3d
 558, 561; see also Bradley v. People, 9 P. 783, 786
 (Colo. 1886) ("The common law is . . . to be taken into
 account in construing a statute.").
 
 
          ¶62
 While the legislature is free to abrogate the common law,
 "[a] statute is not presumed to alter the common law
 except to the extent that such statute expressly
 provides." Beach v. Beach, 74 P.3d 1, 4 (Colo.
 2003); see also Robbins v. People, 107 P.3d 384, 387
 (Colo. 2005) (noting that a "statute may not be
 construed to abrogate the common law unless such abrogation
 was clearly the intent of the general assembly").
 Consequently, when the legislature decides to "abrogate
 . . . the common law, it must manifest its intent either
 expressly or by clear implication." Vigil, 103
 P.3d at 327 (quoting Vaughan v. McMinn, 945 P.2d
 404, 408 (Colo. 1997)).
 
 
          ¶63
 There is no clear intent, either express or implicit, in
 subsection (2) that the General Assembly wished to abrogate
 the common law and to take away the right to a jury trial on
 factual disputes in FED-possession cases. And we refuse to
 "lightly infer a legislative abrogation of the common
 law." State Farm Mut. Auto.
 
 30
 
 Ins. Co. v. Johnson, 2017 CO 68, ¶ 15, 396 P.3d
 651, 655. Accordingly, our jurisprudence requires us to
 interpret the language of subsection (2) consistent with the
 common law.
 
 
          ¶64
 Significantly, this is not the first time we have looked to
 the common law in interpreting the FED statute. In
 Francam Building Corp. v. Fail, 646 P.2d 345, 348
 (Colo. 1982), we held that the statutory notice requirement
 in FED actions was waivable. One of the considerations that
 led us to that conclusion was that "the demand and
 notice requirement . . . [was] the modern, statutory
 counterpart of the common-law demand for rent
 requirement," which could be "waived by lease
 provisions." Id. Guided by the common law here,
 as we were forty-two years ago in Francam Building
 Corp., we conclude that in FED-possession actions,
 subsection (2) assigns to the jury the role of resolving
 factual disputes underlying the issue of unlawful detainer,
 and to the court the role of resolving the ultimate legal
 question of whether the defendant committed unlawful
 detainer.
 
 
          ¶65
 True, subsection (2) says that "the court or jury,"
 not just the jury, may resolve the factual allegations
 underpinning the issue of unlawful detainer. But that's
 because it is not a given that there will be a jury trial.
 Remember that, in order to receive a jury trial, a party must
 timely request a jury and pay the jury fee. C.R.C.P. 338(b),
 (c); see also § 13-71-144(1)(c), C.R.S. (2024).
 Further, the parties may waive a trial by jury.
 
 31
 
          ¶66
 Even if there is a jury trial, the ultimate legal question
 always remains the exclusive province of the court. Thus, the
 court or the jury may try the factual disputes underlying the
 issue of unlawful detainer and may further decide how much
 rent (if any) the defendant owes and, if the plaintiff is
 seeking money damages, what money damages (if any) the
 defendant is liable for. However, the court (and only the
 court) must decide the ultimate legal question of whether
 "the defendant has committed an unlawful detainer."
 § 13-40-115(2). And if the court finds that the
 defendant has done so, it must enter a restitution judgment
 and impose reasonable attorney fees and costs.
 
 
          ¶67
 By way of example, a jury may resolve a factual dispute
 related to whether a tenant engaged in conduct that
 constitutes a breach of the lease (e.g., having pets in the
 residence), but the court may still find no unlawful detainer
 under the law because the landlord failed to comply with the
 requirements under the FED statute. See Hix v. Roy,
 340 P.2d 438, 439 (Colo. 1959) (reversing the judgment in a
 statutory FED suit because the landlord did not serve "a
 proper notice to quit"); Arvada Vill. Gardens,
 ¶ 17, 529 P.3d at 108 (dismissing a statutory FED action
 because the landlord failed to satisfy the statutory notice
 requirements). Or, alternatively, the court may find no
 breach of the lease by the tenant, and thus no unlawful
 detainer, based on its interpretation of the terms of the
 lease, even though a jury may have already found that the
 tenant engaged in the alleged
 
 32
 
 conduct.[6] After all, the interpretation of a lease
 agreement is a question of law for the court. See French
 v. Centura Health Corp., 2022 CO 20, ¶ 24, 509 P.3d
 443, 449; Perry v. White, 193 P. 543, 544 (1920)
 ("What the lease contained was a question for the
 court.").
 
 
          ¶68
 Mercy Housing nevertheless insists that subsection (1)
 controls when, as here, possession is the only claim at
 issue. In its view, subsection (2) is relevant only when
 there are both possessory and money damages claims. According
 to Mercy Housing, the use of the word "jury" in
 subsection (2) means that it is for the court to
 determine possession while the "court or
 jury" may determine the amount of damages. But such
 an interpretation ignores some of the language in subsection
 (2). Specifically, it overlooks the following phrases:
 "[I]f the court or jury has not already tried
 the issue of unlawful detainer, it may do so,"
 and "the court or jury shall further find
 the amount of rent, if any, due to the
 plaintiff." § 13-40-115(2) (emphases added). These
 phrases clearly envision that a "jury"
 "may" "tr[y] the issue of unlawful
 detainer" and may, in addition, determine "the
 amount of rent owed, if any."
 
 33
 
          ¶69
 Importantly, interpreting subsection (2) as we do is the
 only way to avoid deleting words or rendering them
 meaningless. Of course, "[w]e do not . . . subtract
 words from a statute." Nieto v. Clark's Mkt.,
 Inc., 2021 CO 48, ¶ 12, 488 P.3d 1140, 1143
 (quoting People ex rel. Rein v. Meagher, 2020 CO 56,
 ¶ 22, 465 P.3d 554, 560). Nor may we construe a statute
 in a way that renders any terms meaningless. Well
 Augmentation Subdistrict of Cent. Colo. Water Conservancy
 Dist. v. City of Aurora, 221 P.3d 399, 420 (Colo. 2009).
 Instead, "we must respect the [legislature's] choice
 of language." Pellegrin v. People, 2023 CO 37,
 ¶ 22, 532 P.3d 1224, 1228-29. Subsection (2) says what
 it says. It mentions "jury" twice, and nowhere does
 it restrict the role of the jury to determining money
 damages. We cannot pretend otherwise.
 
 
          ¶70
 Notably, since 2019, the General Assembly has amended
 provisions in the FED statutory framework a dozen times
 without making any relevant changes. Mercy Housing sees this
 as an affirmation of its interpretation of subsections (1)
 and (2). But we consider Bermudez's analysis of the
 amendments more persuasive. When the General Assembly
 "chooses to legislate in a particular area," we
 presume that it is "aware of existing case law
 precedent." Vigil, 103 P.3d at 327.
 Consequently, we presume the General Assembly was aware of
 Baumgartner, Husar, RTV, and other
 cases holding that tenants are entitled to a jury trial on
 factual issues in FED-possession cases. Yet, when it has
 amended provisions in
 
 34
 
 the FED statutory framework, the General Assembly has made no
 attempt to overrule that authority.
 
 
          ¶71
 Having now (1) reaffirmed that, as recognized in C.R.C.P.
 338(a), there is a statutory right to a jury trial on factual
 issues in FED-possession actions, and (2) clarified that the
 rule is consistent with the FED statute, we turn to the
 concerns expressed by Mercy Housing and the county court
 that, with this holding, we take a battering ram to the
 floodgates, which will cause our justice system to break
 down.
 
 
          C.
 Policy Arguments Against Recognizing a Jury-Trial Right in
 FED-Possession Actions
 
 
          ¶72
 Mercy Housing and the county court argue that the summary
 nature of FED actions paired with the large volume of these
 cases would make jury trials functionally impractical, if not
 impossible. They assert that, of the approximately 27,000
 cases on the Denver County Court's civil docket each
 year, the vast majority (an estimated 90% or more) are FED
 cases, and that the county court sets thirty to forty-five of
 these cases for trial every week. Should these cases begin to
 go to jury trial, Mercy Housing and the county court argue
 that the expanded demand would overwhelm the jury pool,
 making it unrealistic that judges will be able to impanel the
 requisite number of jurors in any case. That the issues of
 possession and money damages in FED trials are often
 bifurcated will arguably further exacerbate the demand on the
 courts and jurors.
 
 35
 
          ¶73
 Adding to the consternation, Mercy Housing worries that this
 volume of jury trials would make compliance with the
 timelines in the FED statutory framework an insurmountable
 challenge, defeating the purpose of a summary process. As
 Mercy Housing correctly notes, in FED actions, once the
 defendant's answer is filed, the court is required to
 "set a date for trial no sooner than seven, but not more
 than ten days after" that filing, absent the court's
 finding of good cause or the defendant's request for a
 waiver. § 13-40-113(4)(a), C.R.S. (2024). Mercy Housing
 also fears that jury demands could become ripe for abuse as a
 means for obtaining an automatic delay.
 
 
          ¶74
 We hear these concerns; we do. But in the end, we are bound
 by subsection (2). "The fact that the [law] is difficult
 to administer does not justify a ruling of invalidity
 ...." Flank Oil Co. v. Tenn. Gas Transmission
 Co., 349 P.2d 1005, 1014 (Colo. 1960). So, to the extent
 change is needed, Mercy Housing is knocking on the wrong
 door; the legislature's residence is across the street
 from ours. In any event, as we discuss next, there are
 compelling reasons to believe that the parade of horribles
 Mercy Housing and the county court are anticipating won't
 come to pass.
 
 
          ¶75
 We are not the first court to acknowledge that the right to a
 jury trial on an issue of possession is relatively
 circumscribed and thus of limited burden. While
 
 36
 
 recognizing a jury-trial right in an action brought by a
 landlord for possession of real property, the Supreme Court
 reasoned that:
 
 
 In the average landlord-tenant dispute, where the failure to
 pay rent is established and no substantial defenses exist, it
 is unlikely that a defendant would request a jury trial. And,
 of course, the trial court's power to grant summary
 judgment where no genuine issues of material fact are in
 dispute provides a substantial bulwark against any
 possibility that a defendant will demand a jury trial simply
 as a means of delaying an eviction.
 
 
 Pernell, 416 U.S. at 384. Mercy Housing protests,
 however, that much has changed since Pernell was
 issued in 1974, pointing to the half-dozen tenant advocacy
 groups now available to assist tenants in eviction cases.
 While things no doubt have changed since 1974, we perceive
 the state of affairs with regard to the finite need for jury
 trials as relatively unaltered.
 
 
          ¶76
 Although tens of thousands of FED-possession cases are
 filed each year, the number of those actually
 eligible for a jury trial is much smaller. For
 example, the majority of FED-possession cases filed in
 Colorado result in a default judgment because the tenant
 fails to file an answer.[7] Others end in dismissal, judgment on
 
 37
 
 the pleadings, or settlement because the risk of trial is
 often too great for tenants.[8]Mercy Housing itself acknowledges
 that of the 36,656 FED-possession actions filed by its law
 firm in Colorado in 2023, only 4,683 cases (roughly 13%) were
 set for trial after defendants filed answers.
 
 
          ¶77
 And of those cases that do proceed to trial, many are
 ineligible for a jury trial. A lot of tenants have
 leases that contain jury-trial waivers. See §
 38-12-801(3)(a)(III)(A), C.R.S. (2024) (permitting waiver of
 a jury trial "in a hearing to determine possession of a
 dwelling unit"). Furthermore, the jury-trial right
 referenced in C.R.C.P. 338(a) is available only for factual
 disputes. Additionally, the vast majority of FED actions are
 filed for nonpayment of rent,[9]and as Bermudez points out, it is
 rare for tenants to assert they did pay rent.
 Rather, most tenants admit to not having paid rent and raise
 defenses (such as those [https://perma.cc/74LL-Y254] (showing
 that between 2017 and 2021, the percentage of county court
 eviction cases where a tenant filed an answer ranged from
 5.7% to 15.5%, respectively).
 
 38
 
 grounded in equity) that must be addressed by the court.
 Still other cases are stymied by the non-refundable $98 fee
 required for a jury demand. § 13-71-144(1)(b). Left with
 the few cases that can pass through this exacting strainer,
 any concerns about overburdening the courts are greatly
 reduced.
 
 
          ¶78
 The county court pushes back, however, arguing that even just
 a few cases proceeding to jury trial would be infeasible.
 Yet, the fact that dozens of states recognize a right to a
 jury trial in FED actions for possession suggests the
 contrary. The amici point us to over twenty-five such
 states.[10] Several of those states have rates of
 eviction filings that surpass those of
 Colorado.[11]
 
 
          ¶79
 Nor have other states balked at recognizing the right to a
 jury trial in the context of an expedited timeline for
 FED-possession actions. The demanding timeline to which Mercy
 Housing and the county court anchor some of their policy
 
 39
 
 arguments is not unique to Colorado. Other states'
 FED-possession actions are subject to similar short-fuse
 deadlines.[12]
 
 
          ¶80
 West Virginia's highest state court acknowledged that if
 all tenants asserted their jury-trial right under the
 state's FED statute, that might thwart the statute's
 purpose of providing "a quick procedure to remove a
 hold-over tenant." Criss v. Salvation Army
 Residences, 319 S.E.2d 403, 407 (W.Va. 1984). However,
 the court "d[id] not think this [was] likely,"
 explaining that the right to a jury trial under that
 state's FED statute was "not unlimited," was
 "fruitless" in certain cases, and was subject to
 all of the rules that apply to summary judgments.
 Id. And just as in Colorado, the majority of removal
 proceedings in West Viriginia are based on the failure to pay
 rent. Id. Once the failure to pay rent is
 established in those cases, noted the court, there is no
 genuine issue of material fact and thus no right to a jury
 trial. Id.
 
 
          ¶81
 Very recently, the Idaho Supreme Court acknowledged that the
 twelve-day statutory deadline for bringing FED-possession
 cases to trial would "pose significant hurdles" to
 permitting jury trials, and yet that court found tenants were
 
 40
 
 still entitled to a jury trial on disputed facts.
 Worthington v. Crazy Thunder, 541 P.3d 694, 702-03
 (Idaho 2024).[13] Likewise, the Alabama Supreme Court,
 despite conceding that the state eviction statute was
 specifically designed to provide a "speedy remedy,"
 nonetheless held that tenants had a jury-trial right. Ex
 parte Moore, 880 So.2d 1131, 1132, 1140 (Ala. 2003).
 Thus, in the enduring words of the Pernell Court,
 "we reject the notion that there is some necessary
 inconsistency between the desire for speedy justice and the
 right to jury trial." 416 U.S. at 384.
 
 
          ¶82
 At any rate, in Colorado, the court may find good cause to
 extend the ten-day deadline. § 13-40-113(4)(a). And a
 defendant may request a waiver of the deadline. Id.
 Thus, the deadline is not as rigid as Mercy Housing and the
 county court make it out to be.
 
 
          ¶83
 As for the concerns that a jury-trial right is "ripe for
 abuse" as a delay tactic, Mercy Housing fails to explain
 why our county courts are ill-equipped to handle the few
 cases that may arise in bad faith. Indeed, county courts may
 reach for any number of tools in their procedural toolbox.
 Following a pretrial conference, the court may enter judgment
 or issue a dismissal order. C.R.C.P. 316.5(b) (suggesting a
 summary judgment-like power if there is no genuine dispute of
 material fact).
 
 41
 
 County courts may also grant default judgments and judgments
 on the pleadings, C.R.C.P. 312.5(d), 355(b); issue sanctions,
 C.R.C.P. 311(b); and order parties to "give bond or
 other security" if they request a trial delay longer
 than five days, § 13-40-114, C.R.S. (2024).
 
 
          ¶84
 In sum, we fully recognize that our ruling today may make
 things more challenging for our county courts. But we cannot
 disregard the law. Instead, we must faithfully apply the law.
 Heeding this admonition, we turn now to do just that.
 
 
          D.
 Application
 
 
          ¶85
 As a reminder, Mercy Housing alleged the following violations
 of the Lease: (1) an unauthorized guest had resided with
 Bermudez at Clare Gardens for longer than ninety days; (2)
 Bermudez's unauthorized guest had violated the
 prohibition against maintaining or repairing vehicles on the
 property; and (3) the unauthorized guest had verbally
 threatened and harassed another resident on the property. In
 response, Bermudez asserted that the "facts or
 events alleged as a lease violation either did not
 occur, do not violate the lease, or do not provide
 adequate grounds for termination under federal regulations or
 state law." (Emphases added.) She timely demanded a jury
 trial and paid the jury fee. And the Lease does not contain a
 jury waiver.
 
 42
 
          ¶86
 Whether the alleged conduct violated the Lease or provided
 adequate grounds for termination is a legal question properly
 determined by the court because it requires interpreting the
 Lease and the law. See § 13-40-115(1)-(2);
 French, ¶ 24, 509 P.3d at 449; Perry,
 193 P. at 544. But whether the alleged conduct did in fact
 occur is a factual question that must be decided by a jury.
 See Baumgartner, 353 P.2d at 379 (concluding that
 the defendants were entitled to a jury trial on questions of
 fact). For example, Bermudez claims there was no unauthorized
 guest residing in her residence. Further, asserts Bermudez,
 "the only time" that the person identified in the
 complaint as an unauthorized guest "was on the premises
 and doing anything related to a vehicle" was when he
 jumpstarted her car, which is apparently not prohibited by
 the Lease. These are factual issues a jury must resolve.
 
 
          ¶87
 Accordingly, the county court erred by denying Bermudez a
 jury trial on the disputed facts.
 
 
          V.
 Conclusion
 
 
          ¶88
 For these foregoing reasons, we reverse the Denver County
 Court's denial of Bermudez's jury demand, make
 absolute the order to show cause, and remand with
 instructions for the county court to hold a jury trial on the
 limited factual issues underpinning this FED-possession
 action.
 
 
          
 JUSTICE HOOD, joined by JUSTICE BERKENKOTTER, dissented.
 JUSTICE BOATRIGHT did not participate.
 
 43
 
          
 JUSTICE HOOD, joined by JUSTICE BERKENKOTTER, dissenting.
 
 
          ¶89
 Because I don't believe the General Assembly intended to
 establish a right to a jury trial in
 forcible-entry-and-detainer ("FED") actions for
 possession, I respectfully dissent.
 
 
          ¶90
 I reach this conclusion for three reasons. First,
 irrespective of the many pages the majority devotes to
 whether the issue here is legal or equitable and what we
 might glean from the reference in our rule to "specific
 real . . . property," Maj. op. ¶¶ 34-52, the
 controlling question remains whether a statute provides the
 right to a jury trial, C.R.C.P. 338(a) ("[I]n
 actions wherein a trial by jury is provided by . . .
 statute, including actions for the recovery of specific
 real . . . property, . . . all issues of fact shall be tried
 by a jury." (emphasis added)). Stated differently, even
 if a claim seeking repossession should be categorized as
 legal (and thus provides a right to a jury trial at common
 law), the rule requires that a statute provide the
 right to a jury trial. So, the much more straightforward
 question before us is: Does section 13-40-115, C.R.S. (2024)
 ("the FED statute"), provide the right to a jury
 trial? ¶91 Unlike the majority, I find the FED statute
 to be ambiguous in this regard. See Maj. op.
 ¶¶ 31, 53-69; see also Elder v. Williams,
 2020 CO 88, ¶ 18, 477 P.3d 694, 698 ("A statute is
 ambiguous when it is reasonably susceptible of multiple
 interpretations."). Viewed in isolation, subsection (2)
 of the FED statute can
 
 44
 
 reasonably be construed as providing a litigant such as Naomi
 Bermudez the right to request that a jury decide the factual
 issue of whether she violated her lease.
 
 
 [I]f the court or jury has not already tried the
 issue of unlawful detainer, it may do so. If the court finds
 that the defendant has committed an unlawful detainer, the
 court shall enter judgment for the plaintiff to have
 restitution .... In addition to the judgment for restitution,
 the court or jury shall further find the amount of rent,
 if any, due to the plaintiff ....
 
 
 § 13-40-115(2) (emphases added). The phrase "if
 the court or jury has not already tried the issue of
 unlawful detainer, it may do so," could contemplate, as
 the majority contends, "that a jury (not just a court)
 may try 'the issue of unlawful detainer' when
 subsection (2) is triggered (i.e., when the defendant was
 personally served)." Maj. op. ¶ 60 (quoting §
 13-40-115(2)). Moreover, the word "further" after
 the second reference to "court or jury" could be
 read to imply that the court or jury may determine money
 damages after the court has addressed the existence of an
 unlawful detainer in the first instance, as the majority also
 seems to suggest. Id. at ¶ 68.
 
 
          ¶92
 But other language in the FED statute also strongly supports
 the longtime practice in Colorado of judicial officers
 adjudicating a claim that seeks only the remedy of
 repossession.
 
 
 If the court finds that the defendant has committed an
 unlawful detainer, the court shall enter judgment for the
 plaintiff to have restitution .... In addition to the
 judgment for restitution, the court or jury shall further
 find the amount of rent, if any, due to the plaintiff . . .
 [and] the amount of damages, if any, sustained by the
 plaintiff ....
 
 45
 
 § 13-40-115(2) (emphases added).
 
 
          ¶93
 Because both interpretations are reasonable, the statute is
 ambiguous.
 
 
          ¶94
 Second, in resolving this statutory ambiguity, I
 would look to the structure of Colorado's FED scheme,
 which requires the court to set a trial not more than ten
 days after an answer is filed, absent waiver or good cause.
 § 13-40-113(4)(a), C.R.S. (2024); see also Nieto v.
 Clark's Mkt., Inc., 2021 CO 48, ¶ 13, 488 P.3d
 1140, 1143 (concluding that when a statute is ambiguous, we
 examine, among other things, "the language and structure
 of the statute"). It seems implausible that the General
 Assembly would have expected a jury trial to occur within ten
 days. The everyday logistics of summoning jurors and finding
 space on the docket suggest as much. We can safely assume the
 legislature is aware of these logistical challenges. And yet
 we have repeatedly observed that the legislature intended
 that FED actions should move fast. E.g., Butler
 v. Farner, 704 P.2d 853, 856 (Colo. 1985) ("The
 structure of the F.E.D. statute evinces a legislative intent
 to accelerate trial settings in order to provide an
 expeditious remedy."); Francam Bldg. Corp. v.
 Fail, 646 P.2d 345, 350 (Colo. 1982) (Lohr, J.,
 dissenting) ("The apparent purpose of our [FED] Statute
 . . . is to provide the landlord with a summary procedure for
 recovering possession of his property."). Jury trials
 don't move fast. Not only do they take time to set (and
 reset with continuances and occasional mistrials), but they
 often spawn pretrial battles over a wide range of evidentiary
 and other legal issues that
 
 46
 
 don't crop up as frequently in bench trials. Therefore,
 it makes no sense that the legislature, aware of the burdens
 and delays associated with scheduling jury trials, would
 authorize a potential avalanche of them to occur in a matter
 of days.
 
 
          ¶95
 Third, because the statute is ambiguous, we may also
 consider the consequences of a particular construction.
 § 2-4-203(1)(e), C.R.S. (2024). While the majority sees
 nothing more than the potential for a manageable increase in
 the number of jury trials on issues now routinely handled by
 judges, Maj. op. ¶¶ 72-78, I join Mercy Housing in
 seeing a high risk for trial settings and delays that could
 overwhelm county court dockets even if only a small
 percentage of cases set for trial actually go to
 trial.[1] After all, as the majority recognizes,
 the
 
 47
 
 volume of cases we're talking about, even in Denver
 alone, is staggering. Id. at ¶ 72 ("[O]f
 the approximately 27,000 cases on the Denver County
 Court's civil docket each year, the vast majority (an
 estimated 90% or more) are FED cases, and . . . the county
 court sets thirty to forty-five of these cases for trial
 every week."). Unlike the majority, I worry that
 today's ruling will force courts to find "good
 cause" to set these trials outside the ten-day
 requirement based on docket congestion resulting from the
 increase in jury-trial settings. See §
 13-40-113(4)(a) ("[A] court may extend beyond ten days
 if either party demonstrates good cause for an extension, if
 the court otherwise finds justification for the extension, or
 if a party participating remotely pursuant to section
 13-40-113.5[, C.R.S. (2024),] was disconnected and unable to
 reestablish connection."). As Mercy Housing argues, if
 courts start extending the trial timeframes, "jury
 demands could become ripe for abuse as a means for obtaining
 an automatic delay." Maj. op. ¶ 73. Again, such a
 delay is flatly antithetical to a statutory scheme designed
 for speedy resolution of routine factual issues surrounding
 alleged violations of residential leases.
 
 
          ¶96
 I also feel compelled to address what is not at issue. The
 majority repeatedly points to Pernell v. Southall
 Realty, 416 U.S. 363 (1974), which addresses the right
 to a jury trial in unlawful detainer cases seeking possession
 in Washington, D.C.
 
 48
 
 under the Seventh Amendment to the United States
 Constitution, to support its interpretation of the FED
 statute as requiring jury trials. Maj. op. ¶¶ 1-2,
 50, 75, 81. But the Seventh Amendment doesn't apply here.
 McDonald v. City of Chicago, 561 U.S. 742, 765 n.13
 (2010) (noting that the Seventh Amendment is one of several
 amendments contained in the Bill of Rights that have not been
 fully incorporated by the Fourteenth Amendment's Due
 Process Clause as applicable to the states). Instead, as the
 majority acknowledges, Maj. op. ¶ 4, in Colorado there
 is no constitutional right to a jury trial in civil cases,
 see, e.g., Garhart ex rel. Tinsman v.
 Columbia/Healthone, L.L.C., 95 P.3d 571, 580 n.9 (Colo.
 2004) (listing many cases to this effect). Indeed, Colorado
 is one of three states in the nation that provide no state
 constitutional analogue to the Seventh Amendment. Eric J.
 Hamilton, Federalism and the State Civil Jury
 Rights, 65 Stan. L. Rev. 851, 858 (2013). In short,
 Pernell is plainly distinguishable.
 
 
          ¶97
 Moreover, the question presented is not whether modern FED
 proceedings find their roots in common-law ejectment actions.
 See Maj. op. ¶ 7 ("[C]ontrary to the
 assertions by Mercy Housing and the county court, [C.R.C.P.
 338(a)] encompasses FED-possession actions, and the statutory
 right to a jury trial applies as much in a modern
 FED-possession action as it did in an old ejectment
 action."). Simply put, this is not a matter governed by
 the common law. And so, extrapolating from old precedent
 about ejectment seems misguided. Particularly
 
 49
 
 misplaced is the majority's repeated reliance on
 conclusory dicta in a sixty-four-year-old declaratory
 judgment action. Id. at ¶¶ 27, 39-42, 86
 (citing Baumgartner v. Schey, 353 P.2d 375 (Colo.
 1960)). (Husar v. Larimer County Court, 629 P.2d
 1104, 1105 (Colo.App. 1981), another old case the majority
 leans on, relies on the same dicta in Baumgartner.
 Therefore, I would overrule it.) More instructive is the
 following twenty-first-century quote (from an FED action, no
 less): "By creating a special [FED] action with
 accelerated trial procedures, the statutory scheme was
 intended to avoid much of the expense and delay incident to
 the more cumbersome action of ejectment formerly employed at
 common law." Miles v. Fleming, 214 P.3d 1054,
 1056 (Colo. 2009).
 
 
          ¶98
 Mindful that the major policy choice at the heart of this
 case is for the legislature to make, I believe we would do
 better to act with restraint and ask the General Assembly to
 pass legislation that makes its choice plain (and, if it were
 to permit jury trials in these cases, also perhaps to
 allocate more resources to the courts that must implement
 that policy choice).
 
 
          ¶99
 For all these reasons, I respectfully dissent.
 
 
 ---------
 
 
 Notes:
 
 
 [1] Article 40 of title 13, "Forcible
 Entry and Detainer," contains numerous statutes.
 See §§ 13-40-101 to -128, C.R.S. (2024).
 Strictly for the sake of convenience, in this opinion we
 refer to these statutes collectively as "article
 40" or the "FED statutory framework" and to
 section 13-40-115 individually as the "FED
 statute."
 
 
 [2] See, e.g., Adam Porton et
 al., Inaccuracies in Eviction Records: Implications for
 Renters and Researchers, Hous. Pol'y Debate (2020),
 https://www.tandfonline.com/doi/
 pdf/10.1080/10511482.2020.1748084?needAccess=true
 [https://perma.cc/Z748-Y6TU]; Wonyoung So, Which
 Information Matters? Measuring Landlord Assessment of Tenant
 Screening Reports, Hous. Pol'y Debate (2023),
 https:// www.tandfonline.com/doi/epdf/10.1080/
 10511482.2022.2113815?needAccess=true
 [https://perma.cc/VW6U-HAPX]; Eric Dunn, The Case Against
 Rental Application Fees, 30 Geo. J. on Poverty L. &
 Pol'y 21, 24-28 (2022).
 
 
 [3] We realize that Pernell was a
 Seventh Amendment case, which is not implicated here, but the
 source of the jury-trial right at issue there doesn't
 affect the part of the analysis on which we rely.
 Unsurprisingly, although the Seventh Amendment wasn't
 implicated in Husar either, the division there drew
 the same guidance from Pernell that we do.
 
 
 [4] Under section 13-40-112(2), if
 diligent efforts to personally serve the defendant fail, the
 plaintiff may achieve service "by posting a copy of the
 summons and the complaint in some conspicuous place upon the
 premises" and mailing a copy of the complaint and the
 summons (or the alias summons) "to the defendant at the
 premises."
 
 
 [5] We need not-and thus do not-decide why
 the legislature referenced jury trials, money damages, and
 reasonable attorney fees and costs only in subsection (2).
 But, to the extent that the omission of these terms from
 subsection (1) accurately telegraphs the legislative intent,
 it was the General Assembly's prerogative to disallow
 jury trials, money damages, and reasonable attorney fees and
 costs in cases in which the defendant could not be personally
 served.
 
 
 [6] Of course, a trial court may resolve
 any legal questions in advance of a jury trial to foster
 judicial economy. If, based on its interpretation of the
 parties' lease, a court rules that no breach occurred
 even if the factual allegations are true, it doesn't make
 sense to proceed to a jury trial on those factual allegations
 first.
 
 
 [7] Enterprise Cmty. Partners, A New
 Normal: How Eviction Court Filing Data Can Advance a More
 Stable Housing Ecosystem for All Coloradans 1, 6 (Oct.
 2022), https://
 www.enterprisecommunity.org/sites/default/files/2022-10/2022-
 006%20Denver%20White%20Paper%20%28A%20New%20Normal%29%20R7.pdf
 [https://perma.cc/7SJN-7YN9]; see also Colo. Futures
 Ctr., Eviction Cases in Colorado County Courts: A summary
 and limitations of data available from July 2017-July
 20211, 23 (Oct. 2022),
 https://coloradofuturescsu.org/wp-content/
 uploads/2022/10/CFC_Enterprise_Eviction_Cases_Summary_final.pdf.
 
 
 [8] See Colo. Futures Ctr.,
 supra note 5; Aubrey Hasvold & Jack Regenbogen,
 Facing Eviction Alone: A Study of Evictions: Denver,
 Colorado 2014-2016 1, 7-8 (2016),
 https://www.coloradocoalition.org/sites/default/files/2017-09/
 Facing%20Eviction%20Alone%209-11-17.pdf
 [https://perma.cc/89AS-5PC4] (reviewing eviction cases and
 finding that many tenants lost possession of their home due
 to "stipulated" agreements).
 
 
 [9] Hasvold & Regenbogen,
 supra note 6, at 11 (reviewing eviction cases and
 noting in "the majority of cases" surveyed
 "the landlord alleged an amount of overdue rent owed by
 the tenant").
 
 
 [10] Amici are the Colorado Poverty Law
 Project and Colorado Legal Services. See Ryan P.
 Sullivan, Survey of State Laws Governing the Right to
 Trial by Jury in Eviction Proceedings 1-3 (Oct., 2022)
 (unpublished manuscript), https://papers.ssrn.com/
 sol3/papers.cfm?abstract_id=4252792
 [https://perma.cc/BU88-76ND] (listing thirty states that
 "provide for access to a jury in eviction proceedings
 with minimal restrictions or conditions").
 
 
 [11] Eviction Lab,
 https://evictionlab.org/map/
 ?m=modeled&c=p&b=efr&s=all&r'states&y=2018&z=3.65&lat=38.42&lon=-93.23&lang=en
 (last visited Oct. 1, 2024) (providing an interactive map of
 the United States showing eviction data per state from
 2000-2018).
 
 
 [12] Some states that provide a
 jury-trial right in FED-possession actions have an even
 shorter timeline than Colorado's deadline of ten days
 after the answer is filed. For example, in Arizona, the trial
 must be set no more than five days after the plaintiff files
 the complaint. Ariz. Rev. Stat. Ann. §
 12-1176(A) (2024). And in Idaho, the court must schedule a
 trial within twelve days from the filing of the
 complaint. Idaho Code Ann. § 6-310(2)
 (2024).
 
 
 [13] We acknowledge that in
 Worthington, the court found an action for unlawful
 detainer to be an equitable claim. 541 P.3d at 700.
 Regardless of this break from our own holding, the key point
 here is the recognition of a jury-trial right on disputed
 facts in a 2024 case, even in the context of expedited
 proceedings.
 
 
 [1] The majority says that even Mercy
 Housing's own statistics support the notion that
 requiring jury trials in FED-possession actions wouldn't
 unduly burden the court system: "[O]f the 36,656
 FED-possession actions filed by its law firm in Colorado in
 2023, only 4,683 cases (roughly 13%) were set for trial after
 defendants filed answers." Maj. op. ¶ 76. But even
 those numbers would result in roughly ninety trials per week
 from a single organization. Mercy Housing conservatively
 estimates that perhaps one in five of those would require a
 jury trial, based on state and federal laws permitting lease
 agreements to contain jury-trial waivers for most tenants.
 See § 38-12-801(3)(a)(III)(A), C.R.S. (2024)
 (providing that although residential leases can't contain
 a general jury-trial waiver, "the parties may agree to a
 waiver of a jury trial in a hearing to determine possession
 of a dwelling unit"); but see 24 C.F.R. §
 966.6(f) (2024) (prohibiting jury-trial-waiver provisions in
 federally subsidized housing lease agreements). Mercy
 Housing's one-in-five estimate would result in roughly
 eighteen FED jury trials per week from its management company
 alone. See also PropertyManagement.com, The Best
 Property Management Companies in Denver, Colorado of
 2024, https://
 www.propertymanagement.com/companies-in-denver-co/
 [https://perma.cc/ KC5U-VUFK] (noting that there are 233
 property management companies in the Denver metro
 area).
 
 
 ---------